IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRACI BERARDELLI and JOSEPH BERARDELLI, *on behalf of their daughter* M.B., *a minor*, *and individually on their own behalf*, 2003 Green Ridge Street Dunmore, Pennsylvania 18512, | : <br> : CIVIL ACTION NO. _____ <br> : <br> : <br> : <br> : COMPLAINT <br> : (Jury Trial Demanded) |
| *Plaintiffs*, | : |
| v. | : |
| ALLIED SERVICES INSTITUTE OF REHABILITATION MEDICINE, 100 Abington Executive Park Clarks Summit, Pennsylvania 18411, | : <br> : <br> : <br> : |
| *Defendant*. | : |

**COMPLAINT**

Plaintiffs, Traci Berardelli and Joseph Berardelli, on behalf of their daughter M.B., a minor, and individually on their own behalf (collectively, "Plaintiffs"), bring this complaint and state as follows:

## OVERVIEW

1. Plaintiffs bring this action because Defendant has violated and is violating M.B's civil rights by its continued refusal to permit M.B. to attend dePaul School for Dyslexia ("dePaul School") with her specially-trained service dog, Buddy, in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Defendant's contractual obligations and duties to Plaintiffs.

2. M.B. is ten years old and suffers from severe, uncontrolled epilepsy such that medical doctors have determined that the constant companionship of her specially-trained service dog, Buddy, is medically necessary.  As described further herein, Defendant nonetheless refused to permit M.B.'s service dog, Buddy, to attend school with her.

3. M.B. enrolled in dePaul School, a private school for children with dyslexia and other special needs operated as a division of Defendant, in or about November 2011.  Since then, M.B.'s parents repeatedly have requested that M.B. attend school with her specially-trained service dog.  Yet, even in the face of documentation establishing that companionship of her service dog is medically necessary, Defendant has refused to permit Buddy to attend school with M.B..

4. After numerous attempts to obtain the accommodations to which M.B. is legally entitled, that is, companionship of her service dog throughout the school day, and Defendant's refusal to permit Buddy to attend school with M.B., M.B. was forced to miss school and ultimately change schools mid-year.

5. Because of the deliberate and unlawful conduct of Defendant, M.B.'s education has been disrupted, her physical and mental well-being have been jeopardized, and M.B. and her parents have suffered severe emotional distress.

## PARTIES

6. M.B. is a minor child who has resided at all relevant times in Dunmore, Pennsylvania. M.B. attended dePaul School for Dyslexia. Although Defendant was fully aware that escalating seizure activity made it impossible for M.B. to attend school without her service dog, Defendant barred M.B. from attending dePaul School with the service dog.

7. Traci Berardelli is M.B.'s mother and Joseph Berardelli is M.B.'s father (sometimes collectively, "M.B.'s parents"). Traci Berardelli and Joseph Berardelli are the natural parents and legal guardians of M.B. and at all relevant times have been residents of Scranton, Pennsylvania.

8. Allied Institute of Rehabilitation Medicine ("Allied Institute") is located at 100 Abington Executive Park, Clarks Summit, Pennsylvania and is a Pennsylvania not for profit health care and human services provider of various rehabilitation and other health services. Among other things, Allied Institute operates dePaul School for Dyslexia located at 475 Morgan Highway, Scranton, Pennsylvania, and also does business as Allied Services Rehabilitation Hospital.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States, including, *inter alia*, 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973) and 42 U.S.C. §§ 12101 *et seq.* (The Americans with Disabilities Act of 1990).

10. This Court has supplemental jurisdiction over the state law claims in this case pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the claims that are within this Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the jurisdiction of this Court.

## FACTUAL BACKGROUND

12. M.B. is an eleven year old girl, who suffers from severe and uncontrolled epilepsy. In addition, M.B. has a learning disability and developmental delays.

13. Just before M.B. turned three years old, she began to have severe headaches. Thereafter, brain surgery was performed to address the cause of the headaches and further surgeries were performed following complications from the first.

14. M.B. began having seizures around the age of six and was diagnosed with epilepsy around that time.

15. At the end of kindergarten, M.B. was diagnosed with a learning disability and developmental delays.

16. M.B. enrolled in dePaul School in or about November 2011, when she was eight years old and in the third grade. Before enrolling at dePaul School, M.B. had attended school with her service dog, Sasha.

17. M.B.'s parents opted to send M.B. to dePaul School because the school claimed that it was well-suited to address M.B.'s complex medical needs,

including severe, uncontrolled epilepsy, learning disabilities, and developmental delays.

18. The mission of the dePaul School is "to teach students with dyslexia and other related learning disabilities how to learn." According to the school, "dedicated, specially-trained faculty offer a well-structured system of programs aimed at maximizing abilities and compensating for disabilities."

19. When she enrolled at dePaul School, M.B. was temporarily without a service dog because Sasha had become ill. By January 2012, however, M.B. had been paired with another specially-trained service dog named Buddy. After Buddy came into M.B.'s home, M.B. stayed home from school for about two weeks so she and Buddy could bond and train together.

20. Buddy is a four-year-old Golden Retriever dog. Buddy was individually trained by New Hope Assistance Dogs, Inc., a non-profit organization located in Warren, Pennsylvania that trains and provides specially-trained service dogs to people with disabilities.

21. Buddy is trained to identify seizure activity in M.B., often before a seizure starts, and to alert others to the seizure. He is also trained to protect M.B. from self-harm both during and after a seizure.

22. In or about February or March 2012, M.B. and Buddy participated in a public access test administered at New Hope Assistance Dogs and were certified as a team.

23. Once Buddy and M.B. were a certified team, M.B.'s parents told the principal of dePaul School, Suzanne Rickard ("Principal Rickard"), that Buddy would be attending school with M.B..

24. Principal Rickard refused to allow Buddy to attend school with M.B.. The only reason Principal Rickard gave for barring Buddy from school was that he would be a distraction to the other students.

25. dePaul School administration assured M.B.'s parents that the school could accommodate M.B. without M.B. being accompanied by her specially-trained service dog, but Defendant did not propose accommodations in writing.

26. Reasonably relying on Defendant's assurances and promises and because M.B.'s parents believed that dePaul School would better address M.B.'s medical needs, learning disabilities and developmental delays than the large, local public school, M.B.'s parents continued to send M.B. to dePaul School without Buddy for the remainder of the school year.

27. In fact, as Plaintiffs would learn, dePaul School could not accommodate M.B. without her specially-trained service dog.

28. In the fall of 2012, M.B.'s parents again told dePaul School that Buddy needed to accompany M.B. to school, as he had to be with M.B. twenty-four hours a day, seven days a week. Defendant refused to allow Buddy to attend school with M.B.. Again, the only reason Defendant gave for barring Buddy was that he would be a distraction in the classroom.

29. Defendant again assured M.B.'s parents that the school could accommodate M.B. without M.B. being accompanied by her specially-trained service dog, but Defendant did not propose accommodations in writing and did not accommodate M.B..

30. M.B.'s parents met with Principal Rickard again in the fall of 2013, again reviewed M.B.'s medical history, again explained that a seizure could progress and cause serious harm or death if not detected at onset, and again explained that it was medically necessary that Buddy attend school with M.B..

31. When M.B. arrived at school with Buddy on or about October 28, 2013, Defendant nonetheless barred Buddy and refused to allow M.B. to attend school with Buddy.

32. Defendant again denied M.B. admission with Buddy on October 29, 2013.

33. Defendant continued to bar Buddy, even after receiving a letter from M.B.'s pediatrician stating, in part: "Since her [M.B.'s] seizure activity has escalated and is not always obvious, it is medically necessary for 'Buddy,' M.B.'s trained seizure dog, to be with her 24 hours/7 days a week. Buddy is trained to alert of any seizure activity."

34. This time, Defendant offered two reasons for refusing to accommodate M.B. and Buddy. First, the school claimed that another student at the school had dog allergies, but it did not claim that the allergies were a disabling condition. Second, Defendant again claimed that Buddy would disturb and distract the other children.

35. On November 25, 2013, counsel for Plaintiffs wrote Principal Rickard. Counsel for Defendant responded on November 27, 2013, stating, among other things, "Please advise your clients not to return M.B. to school with Buddy."

36. Defendant also demanded that M.B.'s parents suggest accommodations so Buddy could accompany M.B. at school.

37. M.B.'s parents presented a detailed proposal for accommodations.

9

38. Nonetheless, Defendant refused M.B.'s request to return to school with Buddy on December 9, 2013. Instead, Defendant deferred M.B.'s return until January 2, 2014 and agreed to implement some but not all of the accommodations M.B.'s parents proposed.

39. For example, Defendant did not make changes to seating arrangements or classroom assignments for M.B..

40. Defendant however did require Buddy to wear a T-shirt under his working vest on every day that he and M.B. attended dePaul School.

41. M.B. did not attend school for more than two months as a result of Defendant's discriminatory exclusion of her and Buddy. dePaul School sent home only 1 or 2 assignments during the 2 months of M.B.'s forced absence. During the exclusion, M.B.'s academic skills regressed.

42. Once Defendant permitted M.B. to return to school in 2014, M.B. suffered severe anxiety after her long absence from school and was accompanied by her therapist.

43. Because M.B.'s academic skills had regressed, she began to have trouble with her academic coursework upon return. Instead of additional support

to assist M.B. to make up for the time she missed, M.B. was given numerous homework demerit slips when an assignment was missed or incomplete.

44. Once Defendant permitted M.B. to return to school with Buddy, it soon became clear that requiring Buddy to wear a T-shirt impeded his functioning as a service dog. Wearing a T-shirt under his vest impeded Buddy's ability to perform as he was trained to do. With the T-shirt, Buddy did not reliably perform the service functions for which he was trained, *e.g.*, alerting others to seizure activity.

45. Traci Berardelli told Principal Rickard about her concerns regarding Buddy's performance while wearing the T-shirt and Buddy's failure to perform as trained.

46. Defendant offered no accommodations.

47. M.B.'s parents became concerned that M.B. was not safe at school while Buddy was wearing the T-shirt and became convinced that Defendant was unwilling to meet its obligations. The concern was confirmed when dePaul School failed to notify M.B.'s parents that M.B. had a seizure at school and M.B. was found in a postdictal (post-seizure) state and asleep in Principal Rickard's office.

48.     Due to concerns about her physical and emotional safety at dePaul School, M.B.'s parents decided to withdraw M.B. from school.

49.     M.B. suffered emotional distress as a result of Defendant's outrageous conduct, including excluding M.B. from school with her medically-necessary service dog, Buddy, and failing to accommodate her disabilities.  M.B. needed psychological counseling during the time she was excluded from school and since and has suffered physical injury.

50.     M.B.'s parents also have suffered emotional distress as a result of Defendant's outrageous conduct and have suffered physical injury.

## COUNT I
### Violation of M.B.'s Rights under Section 504 of the Rehabilitation Act of 1973

51.     Plaintiffs incorporate all of the allegations in the preceding paragraphs as though fully set forth herein.

52.     M.B. is a person with a disability under Section 504 of the Rehabilitation Act of 1973 in that she has multiple physical or mental impairments (*e.g.*, epilepsy and developmental delays) that substantially limit one or more major life activities, including, *inter alia*, caring for herself and learning.

53. Defendant is a recipient of federal funds for the purposes of Section 504 of the Rehabilitation Act.

54. Buddy has been individually trained to perform tasks for the benefit of M.B., including assisting her during a seizure.

55. Because of her epilepsy, M.B. requires Buddy to be physically with her twenty-four hours a day, seven days a week, including at school.

56. With deliberate indifference to M.B.'s rights, Defendant has barred Buddy from attending dePaul School with M.B..

57. By its conduct, Defendant has violated M.B.'s rights under Section 504 of the Rehabilitation Act.

58. M.B. and M.B.'s parents have suffered harm as a result of Defendant's unlawful conduct.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against Defendant, compensatory damages, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

## COUNT II
### Violation of M.B.'s Rights under
### The Americans with Disabilities Act

59. Plaintiffs incorporate all of the allegations in the preceding paragraphs as though fully set forth herein.

60. M.B. is a person with a disability under the Americans with Disabilities Act of 1990 (ADA) in that she has multiple physical or mental impairments (*e.g.*, epilepsy and developmental delays) that substantially limit one or more major life activities, including, *inter alia*, caring for herself and learning.

61. Defendant is a place of public accommodations within the meaning of the ADA.

62. Buddy has been individually trained to perform tasks for the benefit of M.B., including assisting her during a seizure.

63. Because of her epilepsy, M.B. requires Buddy to be physically with her twenty-four hours a day, seven days a week, including at school.

64. With deliberate indifference to M.B.'s rights, Defendant has barred Buddy from attending dePaul School with M.B..

65. By its conduct, Defendant has violated M.B.'s rights under the ADA.

66. M.B. and M.B.'s parents have suffered harm as a result of Defendant's unlawful conduct.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against Defendant, compensatory damages, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

## COUNT III
## Breach of Contract

67. Plaintiffs incorporate all of the allegations in the preceding paragraphs as though fully set forth herein.

68. Before M.B. enrolled in the dePaul School, Defendant made a commitment to educate M.B. and represented to them that it was able to accommodate M.B.'s disabilities.

69. M.B.'s parents reasonably relied on Defendants' representations and, as a result, enrolled M.B. in dePaul School based on Defendant's promises.

70. Defendant has breached its contract.

71. The Contract consists of the parent/student handbook and other documents provided to M.B.'s parents and the DePaul School website.

72. The parties had an implied-in-fact contract established by Plaintiff's enrollment, payment of tuition, attendance in classes, and other participation in the curriculum.

73. Plaintiffs have suffered harm as a result of Defendant's breach of contract.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against Defendant, compensatory damages, punitive damages, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

## COUNT IV
### Negligence

74. Plaintiffs incorporate all of the allegations in the preceding paragraphs as though fully set forth herein.

75. Defendant owed M.B. a duty to accommodate her disabilities.

76. Defendant has breached this duty.

77. Plaintiffs have suffered harm as a result of Defendant's negligence.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against Defendant, compensatory damages, punitive damages, costs and

attorneys' fees, and any and all other relief deemed just and equitable by this Court.

## COUNT V
### Intentional Infliction of Emotional Distress

78. Plaintiffs incorporate all of the allegations in the preceding paragraphs as though fully set forth herein.

79. Defendant's conduct, including barring M.B. from school with her service dog, Buddy, is extreme and outrageous and intentionally or recklessly caused severe emotional distress to M.B. and M.B.'s parents.

80. As a result of Defendant's extreme and outrageous conduct, M.B. and M.B.'s parents have suffered physical injury or harm.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against Defendant, compensatory damages, punitive damages, costs and attorneys' fees, and any and all other relief deemed just and equitable by this Court.

FRANKEL & KERSHENBAUM LLC

/s/ Joshua M. Kershenbaum
Joshua M. Kershenbaum, Esq. (PA 203270)
Leah Snyder Batchis, Esq. (PA 203605)
1230 County Line Road
Bryn Mawr, PA 19010
Telephone: (610) 922-4300
Fax: (610) 646-0888
Josh@MyKidsLawyer.com
Leah@MyKidsLawyer.com


SCHNADER HARRISON SEGAL & LEWIS LLP

/s/ Nicole Reimann
Nicole Reimann, Esq. (PA 57707)
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 751-2000
Fax: (215) 751-2205
nreimann@schnader.com

*Attorneys for Plaintiffs,
Traci and Joseph Berardelli on behalf of M.B. and individually on their own behalf*

Dated: April 9, 2014