**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRACI BARDELLI,** *et al.*, | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:14-0691** |
| | : | |
| **v.** | : | |
| | : | **(JUDGE MANNION)** |
| **ALLIED SERVICES INSTITUTE** | | |
| **OF REHABILITATION MEDICINE,** | : | |
| | : | |
| **Defendant** | : | |

## M E M O R A N D U M

Plaintiffs Traci and Joseph Bardelli, individually and on behalf of their minor daughter M.B., filed this action regarding their attempt to have M.B. attend dePaul School with her service dog Buddy, trained to identify seizures in M.B. and to alert others when she has a seizure. M.B., a 10-year student with epilepsy who was previously enrolled at dePaul School, was prevented from attending the school with Buddy. After M.B. was barred from attending the school with Buddy, her parents enrolled her in the Dunmore School District where they lived.

Defendant had filed a motion to dismiss, (Doc. 8), arguing that plaintiffs failed to exhaust their administrative remedies pursuant to the Individuals with Disabilities Educations Act. For the following reasons, the motion to dismiss will be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs' complaint, (Doc. 1), alleges that M.B. has severe and uncontrolled epilepsy as well as a learning disability and developmental delays. M.B. enrolled in dePaul School in November of 2011 at age eight. Previously, M.B. attended a different school with her service dog, Sasha. M.B.'s parents decided to enroll M.B. at dePaul School since it was suited to address her stated medical conditions. The dePaul School is a division of the defendant Allied Services Institute, a Pennsylvania not for profit health care and human services provider of rehabilitation and health services. Initially, when M.B. was enrolled at dePaul School, she did not have Sasha since the dog was ill. M.B. then received Buddy in January of 2012, a service dog specially trained to identify seizure activity in M.B., to alert others of seizures, and to protect M.B. from self-harm during and after a seizure. After M.B. and Buddy trained together, they were a certified team. M.B.'s parents then advised the principal at dePaul School that Buddy would be accompanying M.B. to school. The principal refused to allow Buddy to be at the school with M.B. stating that Buddy would distract other students. The defendant represented to M.B.'s parents that the school could accommodate M.B. without her service dog, but the defendant did not propose written

---

[1]The facts alleged in plaintiffs' complaint must be accepted as true in considering the defendant's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

accommodations.

In reliance on the defendant's representations, M.B.'s parents continued to have M.B. attend dePaul School without her service dog for the remainder of the spring 2012 school year.

When the fall 2012 school year began, M.B.'s parents advised dePaul School that Buddy had to accompany M.B., but the defendant refused to allow Buddy at the school again claiming that he would be a distraction. The defendant again assured M.B.'s parents that the school could accommodate M.B. without her service dog, but the defendant did not propose written accommodations and did not accommodate M.B.

In the fall of 2013, M.B.'s parents met again with the principal of dePaul School and explained why it was medically necessary for Buddy to accompany M.B. at school. When M.B. arrived at school on October 28, 2013, with Buddy, the defendant refused to allow M.B. to attend with the dog. The next day, the defendant again refused to allow M.B. to attend school with Buddy. Further, despite a letter from M.B.'s pediatrician stating why it was medically necessary for Buddy to be with M.B. 24 hours per day, the defendant continued to prohibit Buddy at the school. The defendant claimed that another student at the school had dog allergies that Buddy would distract other students. On November 25, 2013, counsel for plaintiffs wrote to the principal about the situation with M.B. Defendant's counsel responded on November 27, 2013, stating, in part, "Please advise your clients not to return

3

M.B. to school with Buddy."

Upon the defendant's request to provide proposed accommodations for Buddy to go to the school with M.B., M.B.'s parents submitted proposals. The defendant still refused to allow M.B. to attend the school with Buddy in December of 2013, and forced M.B. to remain absent from the school for two months. The defendant deferred M.B.'s return to January of 2014, with accommodations, including a requirement that Buddy wear a t-shirt under his service vest. Buddy was allowed to accompany M.B. wearing the t-shirt. However, the t-shirt allegedly hindered Buddy's ability to function as a service dog and the defendant did not propose any accommodations. In fact, M.B. suffered a seizure at the school and her parents were not notified. Thus, M.B.'s parents decided to withdraw M.B. from dePaul School since they were concerned about her safety.

The plaintiffs then brought this suit on April 9, 2014, asserting federal claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12131, *et seq*. The plaintiffs also raise state law claims for breach of contract, negligence and intentional infliction of emotional distress ("IIED"). (Doc. 1). On June 13, 2014, the defendant filed a motion to dismiss the plaintiffs' complaint with respect to their federal claims under Fed.R.Civ. 12(b)(1) and with respect to their adult state law tort claims under Fed.R.Civ.P. 12(b)(6). (Doc. 8). The defendant's motion has been briefed and is ripe for disposition. (Doc. 10; Doc.

12).

This court's jurisdiction over the plaintiffs' federal claims is based on 28 U.S.C. §1331 and, the court's pendent jurisdiction over their state claims is based on 28 U.S.C. §1337.

## II.    STANDARD OF REVIEW

The defendant's motion to dismiss is brought, in part, pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified

only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

The defendant's motion also facially challenges this court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure claiming that the plaintiffs failed to exhaust their administrative remedies depriving this court of jurisdiction. "Dismissal under a facial challenge is proper 'only when the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.'" Byrne v. Cleveland Clinic, 684 F.Supp.2d 641, 648-49 (E.D.Pa. 2010) (citing Kehr Packages, Inc., 926 F.2d at 1408–09) (quoting Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). "In this circumstance, the court must accept all well-pleaded allegations in plaintiff's complaint as true, and must view them in the light most favorable to the non-movant." Id. at 649 (citing In re Kaiser Group Int'l Inc., 399 F.3d 558, 561 (3d Cir. 2005)). Additionally, "a party asserting that the court has jurisdiction always bears the burden of showing that the case is properly before the court." Id. (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

"A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." Vieth v. Pennsylvania, 188 F.Supp.2d 532, 537 (M.D.Pa. 2002) (citation omitted). "A

7

plaintiff's failure to exhaust administrative remedies is a jurisdictional issue, such that the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction." Swope v. Central York School Dist., 796 F.Supp. 2d 592, 599 (M.D. Pa. 2011) (citations omitted); Batchelor v. Rose Tree Media School Dist., 759 F.3d 266 (3d Cir. 2014) (Third Circuit affirmed the dismissal of plaintiffs' federal claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because they failed to exhaust the administrative remedies under the IDEA.). "Unlike dismissal under [Fed. R.Civ.P.] 12(b)(6), dismissal under Rule 12 (b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of plaintiff's case, but only a determination of the court lacks the authority to hear the case." Id. (citing Mortensen v. First Federal Sav. and Loan Ass'n, 549 F. 2d 884, 891 (3d Cir. 1977)).

Also, "the Court must accept the allegations of the [] Complaint as true, and consider whether [plaintiffs' federal] claim[] "clearly appear[s] to be immaterial and made solely for the purpose of obtaining jurisdiction or where [the claim] is wholly insubstantial and frivolous." Byrne v. Cleveland Clinic, 684 F.Supp.2d at 650 (citing Bell, 327 U.S. at 682–83, 66 S.Ct. 773).

## III.   DISCUSSION

The defendant has moved to dismiss plaintiffs' federal claims on the grounds that the plaintiffs failed to exhaust their administrative remedies. The

defendant also argues that the adult plaintiffs' state law tort claims should be dismissed for failing to state cognizable claims. The defendant argues that the gist of the plaintiffs' complaint is that M.B. should have been allowed to bring her service dog to dePaul School and that the school's refusal to permit M.B. to attend with her dog violated her civil rights, and that these issues involve M.B.'s education plan which falls directly under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §1400, *et seq*. As such, the defendant asserts that since the relief sought by the plaintiffs was available under the IDEA, they were required to have exhausted their administrative remedies before they filed this action in federal court.

The plaintiffs contend that the exhaustion of administrative remedies under the IDEA has no bearing in this case since the IDEA does not apply to a private school such as dePaul School. The plaintiffs also maintain that they also have alleged viable state law tort claims for negligence and IIED. The plaintiffs also point out that assuming arguendo that the IDEA does apply, exhaustion of administrative remedies is not required and would be futile since they seek only compensatory damages with respect to their claims under Section 504 and the ADA. *See* Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 89 (3d Cir. 1996) ("plaintiffs may ... be excused from the pursuit of administrative remedies [required under the IDEA] where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process");

9

Batchelor v. Rose Tree Media School Dist., 759 F.3d at 276 (claims are generally exempt from the IDEA's exhaustion requirement if the remedies are not available under the IDEA, such as compensatory and punitive damages).

The court in *Colon v. Colonial Inter, Unit 20,* 443 F. Supp. 2d 659, 665 (M.D. Pa. 2006), stated:

> [Section 504] prohibits discrimination against the disabled in federally funded programs. Specifically, the law provides:
>
> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .
>
> 29 U .S.C. §794(a).
>
> The IDEA and section 504 provide equivalent requirements. The IDEA provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against the disabled.
> *W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995).

"[T]he IDEA ordinarily requires that a party exhaust administrative remedies, see 20 U.S.C. §1415(f) (providing for an impartial due process hearing); see id. at §1415(g) (providing for appeal of any such decision to State educational agency), prior to bringing suit in federal court, id. at §1415(i)(2)(A)." Woodruff v. Hamilton Tp. Public Schools, 305 Fed.Appx. 833, 837 (3d Cir. 2009). The IDEA exhaustion requirement is jurisdictional. *See* Blunt v. Lower Marion School Dist., 559 F.Supp.2d 548 (E.D.Pa. 2008) (dismissing unexhausted claims for lack of jurisdiction under Rule 12(b)(1));

10

J.N. ex rel. J.N. v. Penn-Delco School Dist., --- F.Supp.3d ----, 2014 WL 5790937, \*2 (E.D.Pa. Nov. 07, 2014) (the exhaustion requirement under the IDEA "is not a matter of discretion—it s jurisdictional") (citation omitted). The plaintiffs do not contend that they exhausted administrative remedies before they filed this action. Rather, they state that dePaul School is a private school and thus their federal claims are not subject to the IDEA's exhaustion requirement. The plaintiffs aver that dePaul School is a division of the defendant Allied Services Institute, "a Pennsylvania not for profit health care and human services provider of rehabilitation and health services." (Doc. 1, at ¶ 8).

"Under the IDEA, a state receiving federal educational funding must provide children within that state a 'free appropriate public education' (FAPE). See 20 U.S.C. §§1412(a)(1)(A), 1401(9)." C.H. v. Cape Henlopen School Dist. 606 F.3d 59, 65 (3d Cir. 2010). For their contention that the IDEA does not impose liability upon private entities, the plaintiffs rely, in part, upon J. v. School Dist. of Philadelphia, 2007 WL 1221216, \*2–\*4 (E.D.Pa. Apr. 25, 2007) (holding that "the local educational agency is the appropriate target of a suit under the IDEA," and that private entities are not liable under the IDEA since it "obligates the 'State'-not the private school-to 'ensure' that such children 'are provided special education and related services, in accordance with an individualized education program'") (citations omitted). The plaintiffs also rely on Koehler v. Juniata County Sch.Dist., 2008 U.S. Dist. LEXIS

11

32079, \*22-\*23, 2008 WL 1787632 (M.D. Pa. Apr. 17, 2008), in which the court granted a motion to dismiss a claim under the IDEA against  private schools since they were not bound by the IDEA. The plaintiffs attached both unpublished opinions to their brief as exhibits, A & B. (Doc. 12-1; Doc. 12-2).

In *Koehler*, the court found that since two of the entities against which the plaintiff filed an IDEA claim were private entitles, they were not subject to direct liability under the provision of the IDEA. Id., 2008 WL 1787632, \*5. The *Koehler* Court stated, "[t]here is no provision that imposes upon a private entity the obligation to ensure compliance with the IDEA." Id., at \*7. "Thus, even when a private entity is the means of effectuating the mandate of the IDEA, public agencies retain responsibility for ensuring that IDEA standards are upheld." Id. (citing St. Johnsbury Acad. v. D.H., 240 F.3d 163, 171 (2d Cir. 2001) (holding that private entities are not liable under the IDEA); Ullmo v. Gilmour Acad., 273 F.3d 671, 679 (6th Cir. 2001) (same)).

Since the court must accept the plaintiffs' allegation as true for present purposes, dePaul School is a private entity, and "[p]rimary liability under the IDEA, therefore, does not rest with [this] Defendant[]." As such, the plaintiffs were not required to have exhausted their administrative remedies under the IDEA. The court will deny the defendants' motion to dismiss the plaintiffs' federal claims.

The defendant also moves to dismiss the adult plaintiffs' state law tort claims for negligence and IIED under Rule 12(b)(6) for failure to state a claim.

The defendant argues that the adult plaintiffs' state law tort claims for negligence and IIED should be dismissed since "the adult plaintiffs allege that they have been harmed as a result of alleged actions by the defendant against their daughter" and "Pennsylvania Law does not recognize a claim for filial consortium." (Doc. 10, at 9). The defendant cites to Jackson v. Tastykake, Inc., 648 A. 2d 1214, 437 Pa. Super. 34 (1994), for its latter proposition. The plaintiffs counter that their "claims for negligence and intentional infliction of emotional distress are not filial consortium claims" and that the negligence claim is asserted only by M.B. (Doc. 12, at 12). In their negligence claim, the plaintiffs aver: "75. Defendant owed M.B. a duty to accommodate her disabilities.76. Defendant has breached this duty. 77. Plaintiffs have suffered harm as a result of Defendant's negligence." (Doc. 1, at 16). The negligence claim raised on behalf of M.B. is clearly not a claim for filial consortium and the defendant's motion to dismiss it will be denied.

In their IIED claim, the plaintiffs allege: "79. Defendant's conduct, including barring M.B. from school with her service dog, Buddy, is extreme and outrageous and intentionally or recklessly caused severe emotional distress to M.B. and M.B.'s parents. 80. As a result of Defendant's extreme and outrageous conduct, M.B. and M.B.'s parents have suffered physical injury or harm." (Doc. 1, at 17). "To date, the Pennsylvania Supreme Court has not expressly recognized a cause of action for IIED." Wilson v. American General Finance Inc., 807 F.Supp.2d 291, 301 (W.D.Pa. 2011) (citing Taylor

v. Albert Einstein Medical Center, 562 Pa. 176, 754 A.2d 650, 652 (2000)).

Other courts in Pennsylvania have recognized an IIED claim and have indicated that to state such a claim, a plaintiff must allege extreme and outrageous conduct which intentionally or recklessly causes him severe emotional distress. Id. (citations omitted); Reedy v. Evanson, 615 F.3d 197, 231-32 (3d Cir. 2010). Thus, to state an IIED claim "Defendants' conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hines v. Proper, 442 F. Supp. 2d 216, 224 (M.D. Pa. 2006) (citing Restatement Second of Torts §46, comment (d)(1965); Wilson v. American General Finance Inc., 807 F.Supp.2d at 303. "In addition, Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress." Hines v. Proper, 442 F. Supp. 2d at 224 (citation omitted). "Finally, Pennsylvania law requires some type of physical harm due to the Defendant's outrageous conduct to satisfy the severe emotional distress element." DiLoreto v. Costigan, 600 F.Supp.2d 671, 691 (E.D. Pa. 2009) (citations omitted); Wilson v. American General Finance Inc., 807 F.Supp.2d at 303 ("A resulting physical harm must also be alleged.") (citation omitted).

The court finds that the allegations of plaintiffs' IIED claim meet the requirements discussed above, at this stage of the proceedings. The plaintiffs allege that the defendant's conduct was extreme and outrageous and that the

infliction of emotional distress caused all of them physical injury or harm. The adult plaintiffs are not basing their IIED claim upon alleged damages suffered by M.B. Thus, the court will deny the defendant's motion to dismiss  with respect to Count V of the plaintiffs' complaint, *i.e.*, the IIED claim.

The court will exercise supplemental jurisdiction over the plaintiffs' state law tort claims pursuant to 28 U.S.C. §1367(a) since these claims are intertwined with their federal claims. Koehler v. Juniata County Sch.Dist., 2008 WL 1787632, *13-*14 (the court held that plaintiff's claims against the defendants for negligence and intentional infliction of emotional distress were not preempted by the IDEA's comprehensive remedial scheme and that the state law claims were intertwined with the federal questions presented).

## IV.    CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (Doc. 8), will be **DENIED** with respect to all of the plaintiffs' claims. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 6, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0691-01.wpd

15